Good morning, Your Honor. I'm Bruce Salabrisi for the Appellant's Boston Financial Group Long-Term Disability Plan, and I would like to reserve a little time for rebuttal if I may. The United States Supreme Court has considered it important enough to state twice in the last two years, first in the Glenn case and then in the Concright case, that even in the face of a structural conflict, the review in court must afford deference to the discretionary decision of an ERISA claims administrator. And in both of those cases, the Supreme Court repeated the longstanding rule that the administrator's decision is not to be disturbed if reasonable, and that the review in court may not substitute its judgment for that of the administrator. In this case, the district court stated on page 12 of the district court's order, the October 2009 order that we're here on today, that it was applying the Kearney v. Standard case. And the district court stated that it's its job to evaluate the persuasiveness of the conflicting testimony and decide which is more likely true. But that's just wrong. The Kearney case was a de novo review case, and that would have been the obligation of the district court in a de novo review case. But in an abuse of discretion review such as we have here, it is the administrator who is entitled to deference regarding its determination as to the persuasiveness of the conflicting testimony and deciding which is more likely true. The district court further here misread a decision of this court, the Montour case. And in the Montour case, the court found on the particular record before it that there was an abuse of discretion. But the district court here took the Montour case and the various issues that the court looked at in the Montour case and treated them as if they were a checklist of things that the administrator was required to do. And then the district court said, well, Hartford, the claims administrator here, you did not do everything that was suggested or you did act in a manner similar to Montour, and therefore, you are biased. And judgment must be entered in favor of Ms. Finley. And this misreading of Montour was contrary to the mandates of the Supreme Court, and it was error and very severely prejudicial error to Hartford. On the record here, even taking the structural conflict into account, there is solid support that the administrator's decision was reasonable under Glenn and Concrete. The issue is, could a reasonable person looking at the evidence in the record conclude that Ms. Finley no longer met the definition of disability under the plan? Mr. what – give me your last name again. Celebrezze, Your Honor. Sullivan? Celebrezze. Oh, Celebrezze. It's an Italian name. Well, it's kind of hard to spell, too. It is, indeed. All right. We looked to see whether the decision of the administrator was reasonable, and how does the fact come into our decisional process? How do we treat the fact that the administrator is the same person or the same company that's going to be paying out the money if the administrator determines that a valid claim has been made, and if they determine it's invalid, they don't have to pay out the money? Now, that's a conflict of interest. It's a structural conflict of interest. Isn't that right? That is correct, Your Honor. And so how does that weigh into the reasonableness determination that you are asking us to make? Well, it weighs in because what the Supreme Court in the Glenn case, which obviously we are all governed by what the Supreme Court tells us, what the Supreme Court said is, number one, when you have discretionary review and it's undisputed there is here, there is deferential review. But the Supreme Court went on to point out, because it's basically the same factual scenario, you had the administrator there also was both the funder and the decision And the court said in Glenn that the conflict must be weighed as a factor, a factor, in determining whether there was an abuse of discretion, but that the conflict alone did not strip the administrator of its discretion. The court said that there are many factors that a reviewing judge must look at, but the conflict is just one of them. And the problem that we have in this case is that the district court here never got past conflict. The district court said that Hartford, there was a history of bias, and then the court looked at the various things that the company did, such as they did not obtain an independent medical examination, they relied on surveillance to a certain degree, et cetera, and found well, each of those are bias. Because in the Montour case, they were found to be biased. Therefore, here they're found to be biased. And therefore, the court completely threw out the requirement of the Supreme Court that conflict be just one factor. And, of course, this Court has said in Abatey, and the Supreme Court did not disagree with that, that you – well, let me move on, if I may. The thing – one of the other points that the Supreme Court made in Glenn was that dealing with a conflict issue was that each case had to be looked at on a case-specific basis. And the court was not to create a new set of standards or a new burden of proof in dealing with conflict. So what did we have here, and why is this – we have a real process problem in this case. Here, the district court found that Hartford had a history of biased claims administration. And that is something the Glenn court talked about as a factor to be looked at. But the Glenn court was citing to the infamous Unum scandal and explaining what they were talking about for a history of biased claims administration, where there was, in that case, really a systemic problem where there was a company-wide policy of denying claims, of referred to in Glenn. What the district court here said was, well, I'm going to look at Montour, which had come out between Glenn and the time of the court's ruling here. And in Montour, the court found, again, on the record, that Hartford was biased. The court did not, in Montour, find that Hartford had a history of bias. But this court here, our district court, said, well, because Montour found you biased, you have a history of bias. Well, there can be no such thing as a history from one case, and there can be no such thing as a history when you have a finding of bias found on the particular factual record in Montour. That cannot be transferred over to the factual record here, and it certainly is not the type of bias that the Supreme Court was talking about when it said that a factor to consider is a history of bias. We just had, five weeks ago in the Second Circuit, the Fortune case. We cited the district court case in our briefs. The Second Circuit has now ruled that there was no evidence that Hartford does have a history of bias. So what does one do with that? I wonder if we could move on to the merits. Let's put aside the standard of review for a second. Yes, Your Honor. You've got this devastating video of the plaintiff doing things she supposedly says she can't do, but that she has an explanation for it. She does. She's got this condition that comes and goes, and they caught her on a good day, basically, I think, is what it boils down to. That's her position, Your Honor. What's the answer to that? Well, the answer is that somebody, and it should have been the district court, but it's going to have to be this court, has to look at the entire record. And that video is part of the record, and when counsel gets up, she will point out to other as to what the actual evidence showed as to whether or not Ms. Finley was or was not disabled. So what the district court was supposed to do was look at the decision of the administrator decided that she was not disabled any longer, based on the totality of the evidence, all of the different doctor's reports, the video, the interviewing the doctors, et cetera. And what the district court was supposed to do, according to Glenn, and even according to Montour, was look at all of the evidence and determine could a reasonable person determine that this individual was no longer disabled, taking into account the fact that the party making that decision had a structural conflict. And the district court simply did not do that here. The district court created this checklist for Montour, which is really a tremendous problem. If the answer is that if you always have to have an IME, or you always have to you cannot use surveillance without being deemed to be biased, or you always have to put in evidence, or if you disagree with the doctor who is retained by the claimant that you're biased, then we've all violated what the Supreme Court said, which was to look at each case, case specifically on the merits. Is it disputed that she has this angry ‑‑ how do you pronounce it? Angliopathy spondylitis? I think that one of the doctors retained or looking at it for the insurance company disputes it, but fundamentally I think that is undisputed. But the issue is not what is her diagnosis. The issue is what is her functionality. And the real issue is was the decision of the administrator on that issue a reasonable one. And because this is de novo review, since it is so clear that the district court did not apply the correct standard, the district court stated what the standard was, but the district court did not apply the abuse of discretion standard, that it is up to this Court to look at the record and determine, even though Hartford has a structural conflict, and it does, when one looks at the totality of all of the evidence, was the decision reasonable. That is the task of this Court. And that cannot be done if the Montour case is going to be seen as a ‑‑ as a checklist that every time, if the insurer does this, they're biased, and if they don't do that, they're not biased. Did you want to reserve some time? I would, Your Honor. Thank you. Let me, Mr. Packard, ask you a question. Certainly. I was wondering to what extent the credibility question came into play here. I think it was in the video where the investigator goes out and talks to the lady and she says, well, she can't do this, can't do this, can't do this, can't do this. And then I think the investigator played the video that showed her doing all these things, and then she said something about, well, she would have her good days or bad days or something, or whatever. Was there any determination made by anybody as to her credibility? Well, Your Honor, the record reflects that prior to the remand, the district court in her order in the fall of 2007, when she remanded it, went on page after page after page about how appalled the district court was at how this video adversely impacted the claimant's credibility. And clearly, the doctors did comment on that, as well as what they thought the video showed as to the actual medical issues relating to the ability of Ms. Finley to do various The problem that we have here is, between 2007, when the district court found that the credibility was a big problem and one of the reasons that she remanded it, the Montour case came out, Glenn came out, and the Montour case came out, and I think that the district judge concluded the second time that because the Montour court had criticized the use of the surveillance on those facts, on what it showed about Mr. Montour, I think the district court felt, well, if Montour has now criticized the surveillance, then I've got to criticize the surveillance, even though I was appalled by it in the first instance, and so that is part of our problem, which is why we need a de novo look at this record. And so the credibility question is kind of one, and there's no determination one way or the other on this? Well, I don't think that there the decision is whether or not the evidence shows that Ms. Finley was or wasn't disabled, and her credibility is simply a factor that one would look at in determining that, just like any other witness. Thank you, Your Honors. Thank you, Justice Alito. Good morning, Your Honor. Teresa Reniker on behalf of the plaintiff. Could you pull the mic up just a little bit? Thanks. There you go. I'd like to address Judge Thompson's question about credibility first. The district court did say, both in the order, the trial order that resulted in the remand to Hartford, and again in the trial order that resulted in the judgment for Ms. Finley, that the video damaged Ms. Finley's credibility. The district court said that in both orders. But the district court determined that that did not matter because the evidence was not a significant factor, because the evidence supporting Ms. Finley's disability did not rest on her credibility. It rested on her doctor's objective medical findings from imaging studies, from laboratory reports, from his own observations on physical examination, and from his experience, 30 years of experience as a rheumatologist, dealing with patients with this type of disorder. So Dr. Neuwelt, the treating rheumatologist, says, Ms. Finley cannot work because of the pain and fatigue that I would expect, based on my experience, that a patient with her objective findings would be experiencing. But his prediction seems to be at odds with the reality of what she can do. You know, he says that it's not, and the district court determined that it was not. The district court said. That's like saying, you know, you can't believe your eyes. I mean, you look at the tape, and she's obviously doing things that she said she can't do. The district court agreed with that, Your Honor. But the district court also said it doesn't matter because Dr. Neuwelt's determination and the other treating doctors' determination are not based on what Ms. Finley is telling them. So whether Ms. Finley, when she is asked by an insurance investigator, who's sitting on her living room couch in her home, what she can do, says things that match what the video shows, does not matter, because the determination of disability that's been made by her doctors is not dependent on what she's telling them. So even if she's just as inaccurate with her doctors. Kagan, would you just roll that back a little? Because it is, I mean, she has a series of self-reported issues, which it seems to me they do take into account. It's not a question of this is a diagnosis, therefore you can't work. It's a diagnosis coupled with her situation that lead to the conclusion. So I'm, maybe I misunderstood, but I thought, in fact, they had to take into account some of her self-reported restrictions and activity levels. I don't believe that that is what Dr. Neuwelt says in his three letters that are in the record. He says he's looking at the evidence of inflammation in her joints that is shown on x-rays and that he can see when she comes into the office that she has synovitis of her wrists. Her wrists are swollen. That's not something that she is telling him that is something. She's not going in and saying my wrists are swollen from inflammation from an arthritic condition. He is, she's coming into the office, he's looking at her wrists, and he's saying these wrists are swollen. And that tells me. You don't get benefits just because your wrists are swollen. You get benefits if you are disabled. That's correct. Okay. Well, then they have a video that shows she's apparently not disabled. The district court did not agree that the video showed she could work. The district court said it doesn't necessarily follow from less than two hours of intermittent activity. She's picking weeds and gardening and grooming the dog, and she looks pretty robust in these videos. Well, she has to be able to, in order to, she has to be unable to do an occupation for which she's qualified by education, training, or experience. That's not the occupation of Gardner, nor is it the occupation of Dog Walker. She is a person with a long career in investment banking. So the question is, can she work eight hours a day in a job for which she's qualified by education, training, and experience? And her doctors have concluded, and the district court concluded, that the video does not show that she can. Did the doctors ever see the video? Yes, the doctors did see the video, and they wrote letters about seeing the video, and they discussed the video at length with Hartford's doctors and discussed their conclusions based on the video. And her doctors said the video does not change our opinions. In fact, it was Judge Wilkins' specific request in the first order that Ms. Finley's doctors look at the video and say whether it was consistent with their diagnoses, which they did. Some of them had already looked at it and said that it was consistent with their diagnoses and with the restrictions and limitations that they say Ms. Finley is under. I'd like to address the question of whether the court correctly followed Glenn. The district court considered many, many factors in the determination that Hartford had abused its discretion. The district court considered the quality and bases of the medical opinions. What? Of the medical opinions. Okay. There are something like eight reviewing doctors that Hartford has hired to look at this file over the years. But the district court found, you know, consistent with this Court's precedence, that this is not a question that the administrator cannot simply count heads. The administrator can't simply say, well, I've got eight doctors, so I win. That's an abuse of discretion. The administrator has to look at the underlying facts and evidence that are supporting those opinions at the qualifications of the doctors and so forth to determine whether that evidence outweighs the claimant's evidence of disability. And in this case, Hartford abused its discretion by looking at these reviewing doctors' reports, which are riddled with inaccuracies and unsupported assumptions, and crediting those reports above the reports of Dr. Newelt and the other treating doctors who are basing their opinions on objective findings. The district court also considered that Hartford and its doctors gave overwhelming weight to the video surveillance, that the video surveillance was treated as more important than any other piece of evidence, more important than x-rays, more important than laboratory results, more important than the doctors' in-person physical examinations, and that that was evidence of unreasonableness. So the district court considered numerous factors. I think one of the problems that the issue that Hartford has identified is that Hartford is looking at this as the court considering all of those factors as being part of the conflict of interest, and that's not what the court did. Just as the Supreme Court said in Glenn, many of these factors can both indicate procedural unreasonableness and weigh and cause the conflict as a factor to weigh more heavily. That's what the Supreme Court said in Glenn about the factor of MetLife's failure to consider the social security determination, which is also present in this case, that it served two purposes. It showed procedural unreasonableness of the decision, and it showed that MetLife had made a financially advantageous choice in considering the evidence. It had decided to promote Ms. Glenn's disability to the Social Security Administration and then turn around and disregard the Social Security Administration's determination. And the Supreme Court said that factor works two ways. It shows procedural unreasonableness, and it also makes the conflict of interest factor weigh more heavily. That's exactly what the court did here. It looked at a collection of factors that both show that Hartford was procedurally unreasonable, that its decision was unreasonable, and that it reached it in an unreasonable manner, that it took its conflict of its financial interest into account in making the decision. I'd like to briefly address this Court's standard of review because that's been something that's been disputed in the briefs. This Court is reviewing de novo the selection and application of the standard of review, but the district court's findings of fact, which amount to 20 pages between the two trial decisions, are reviewed for clear error. And the plan has not identified any issues of fact, or any findings of fact that it argues are clearly erroneous. The district court did the selection of the standard of review in a summary judgment order in 2007, looking at the evidence under Abatey and deciding that the proper standard of review for it to employ was abusive discretion with moderate skepticism commensurate with what it found to be Hartford's conflict of interest based on the evidence on summary judgment. The plan is not challenging that order. The plan didn't even include that order in its excerpts of record. So the selection of the standard of review here is not in dispute, nor are the findings of fact. The dispute is, did the Court correctly apply the standard of review that it selected, abusive discretion with moderate skepticism, to the facts that it found, which are not clearly erroneous? And the Court did, because it weighed multiple factors, not just factors identified in Montour, but factors that it identified as specific to this case in reaching its conclusion that Hartford abused its discretion. I'd like to say in conclusion, unless the Court has more questions, Ms. Finley's case, Ms. Finley was a successful, highly compensated businesswoman. She loved her job. She felt that it was socially useful, and that was important to her. She would be working if she could, doing that same type of work, if she could, but she can't. I want to call attention, call the Court's attention, to our motion to expedite this appeal, which was filed earlier this year and granted. Ms. Finley is in dire financial circumstances. She tells me that she hasn't been able to pay her mortgage in three months due to some unexpected medical expenses. She does still have her benefits from the Social Security Administration and from Unum Provident, the notorious Unum Provident, neither of which has ever questioned that she's totally disabled. But Hartford has owed her a benefit of $3,700 a month for the last five years, and that is taking a severe financial toll on her. Thank you. Thank you. Thank you, Your Honors. As to the standard of review, the order that the counsel just referred to from 2007 clearly is not the order that we are here on today. That order was issued a year before Glenn. If that's the order we're going on, then this Court absolutely must reverse because it was an order prior to the dictates of the Supreme Court. This appeal deals with the October 2009 order where the Court states that it is applying an abusive discretion review, which is the correct statement of the law, but when the Court then clearly does not apply any such standard at all, giving zero deference to the administrator. It is the administrator's job, of course, as a fiduciary, to follow the process that the plan dictates and that the Supreme Court and this Court has set forth. There are always going to be individuals, obviously individuals who make claims for disability, are hoping that they will get the benefits, and, of course, frequently they do. But it cannot be about, it's got to be about was the administrator's decision reasonable owing all of the duties it does to everyone. Here, Hartford, the administrator, found that Ms. Finley was not disabled under the plan taking all of the factors into consideration. The Supreme Court says Hartford, even with its structural conflict, is entitled to deference. What the district court here did was say Montour says if you are biased in Montour, you're biased here, and if you're biased, you lose. The district court here made no effort whatsoever to look at the record and say I'm trying to weigh this and determine was what the administrator did reasonable or not. In your view, could the Montour situation be a factor for the district court to consider? Not at all, because the Montour case was based on the record in front of Montour. So if it's true that in the Montour case the administrator overread the surveillance or should have gotten an IME, and the reason the court in Montour said it should have gotten an IME is because it said that the — it didn't appear that the doctors had been given all of the documents. No such thing is found here. The Supreme Court says it's a case-specific thing. And so if Montour is — if it — that is really part of the problem here, is the district court treated Montour as being some finding other than on that record, and it so clearly isn't. Thank you, Your Honor. Your Honor, thank you as well. The case just argued as submitted. Thank you. We have some court staff here. This is Butterfield. Okay. What we're going to do is we're going to go back and decide the cases, and we'll come back out in a few minutes and visit with the folks. Thank you.
judges: Thompson, Silverman, McKeown